**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LUCY SCHNABEL, EDWARD SCHNABEL and BRIAN SCHNABEL Individually and On Behalf Of All Others Similarly Situated, | ) ) ) ) | **CIVIL ACTION NO.** |
| Plaintiffs, | ) ) ) | **CLASS ACTION COMPLAINT** |
| vs. | ) ) ) | **JURY TRIAL DEMANDED** |
| TRILEGIANT CORPORATION, A Delaware Limited Liability Company; and AFFINION, INC., A Delaware Corporation, | ) ) ) ) | |
| Defendants. | ) ) | June 17, 2010 |

Plaintiffs, Lucy Schnabel and Edward Schnabel (the "Schnabels") and Brian Schnabel ("Mr. Schnabel") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege based upon personal knowledge, information and belief, and the investigation of their counsel, the following:

## NATURE OF THE ACTION

1.      This action is brought against Defendants, Trilegiant Corporation, Inc. ("Trilegiant") and its parent company, Affinion, Inc. ("Affinion") (collectively, "Defendants"), which, in conjunction with various e-commerce merchants,[1] have created, maintained, and

---

[1] These e-commerce merchants include, *inter alia*, 1-800-Flowers.com, AirTran Airways, Priceline.com, Avon, Hotwire.com, and Classmates.com. "Aggressive Sales Tactics on the Internet and Their Impact on American Consumers" (Nov. 16, 2009), United States Senate Committee on Commerce, Science, and Transportation ("the Committee"), Office of Oversight and Investigations, Government Reform, Majority Staff Report for Chairman Rockefeller, pgs. 13-14, 20, 25, 28 ("November 16, 2009 Staff Report"). The Committee found that Defendants and two other companies that were the subject of the November 16, 2009 Staff Report, Vertrue and Webloyalty, had entered into "partnership" agreements with more than 450 e-commerce companies and e-retailers during the preceding ten years.

carried out an unlawful, unfair, and deceptive scheme in which Defendants:

    (a)    Initiate electronic fund transfers from consumers' credit, debit, or other accounts for the purpose of enrolling them into Defendants' "membership" programs without first obtaining a valid authorization for said transfers, in violation of state and federal law, including, but not limited to, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1691-1968, and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, *et seq.*; and

    (b)    Unlawfully, unfairly, and deceptively market and sell Defendants' "membership" programs, in violation of RICO, California Business and Professions Code §§ 17200, *et seq.* ("UCL"), California Business and Professions Code §§ 17500, *et seq.* ("FAL"), California Civil Code §§ 1750, *et seq.* ("CLRA"), Connecticut General Statutes §§ 42-110a *et seq.* ("CUTPA") and common law.

    2.    The central feature of Defendants' unlawful, unfair, and deceptive practices is a common predatory enterprise through which Defendants, in association with e-commerce merchants from whom consumers have purchased a product or service, place consumers into one (or more) of Defendants' illusory "membership" programs, and then charge consumers' credit card, debit card, or other accounts with unauthorized "membership fees." Defendants' unauthorized charges result from Defendants' unauthorized access to these consumers' private financial and billing information, and come at an individual cost to hundreds of thousands or millions of consumers of between $8.99 per month and $480.00 annually – exclusive of fees charged by financial institutions when Defendants' activities result in consumers' account being overdrawn. As a result of this unauthorized enrollment practice, Plaintiffs and members of the putative Class are billed for services which they do not want and do not understand they have purchased.

    3.    The pattern of fraudulent, misleading, deceptive, and unlawful conduct at issue here is the subject of an investigation by the United States Senate Committee on Commerce,

2

Science, and Transportation (the "Committee").[2]  Affinion was one of three direct marketing companies investigated by the Committee for their use of aggressive sales tactics on the Internet, including the sales tactic known as "post transaction marketing" and "data pass."[3]  The Committee explained that Defendants, and other companies, engage in "aggressive third party post-transaction marketing" of products or services such as Defendants' "membership" programs, confuse consumers by using, *inter alia*, (1) "interstitial sales" offer pages, which appear between the checkout page and the confirmation page of the e-retailer from whom the consumer intends to make a purchase, (2) "pop up" windows, which appear on top of the confirmation page, and (3) hyperlinks or "banners" that are included directly on the confirmation page itself.[4]

4.       The Committee explained that "data pass" occurs when the consumer is "signed up for a third-party membership program without entering his or her credit card information."[5]  Specifically, "[i]nstead of requiring the consumer to enter [his/her] billing information a second time to confirm acceptance of the new offer, the retailer will pass the consumer's credit card and billing information to the third party once the consumer has provided information that the third party regards as 'proof of enrollment,' such as an e-mail address."[6]

5.       The Committee concluded that each company, including Affinion, "use[s] aggressive sales tactics intentionally designed to mislead online shoppers," and that use of these

---

[2] November 16, 2009 Staff Report.

[3] *Id*. at pgs. 2-3.

[4] *Id.*

[5] *Id.*

[6] *Id.*

tactics "exploits shoppers' expectations about the online purchasing process to charge millions of consumers each year for services the consumers do not want and do not understand they have purchased."[7]  The investigation further concluded that *"[h]undreds of e-commerce merchants - including many of the best-known, respected websites and retailers on the Internet - allow these...companies to use aggressive sales tactics against their customers, and share in the revenues generated by these misleading tactics."*[8] (Emphasis added.)

6.      As part of their pattern of wrongful conduct during the Class Period (*i.e.*, February 15, 2008 until the entry of judgment), Defendants have, in association with e-commerce merchants, utilized (and continue to utilize) interstate wire facilities, namely, the Internet and U.S. mail, to fraudulently and deceptively market Defendants' "membership" programs to consumers, and, in doing so, Defendants' business activities have affected interstate commerce.

7.      Defendants do not alert consumers of their enrollment in their "membership" programs.  Instead, consumers are unsuspectingly billed for these programs on the same credit, debit, or charge card used by the consumers for their initial purchase of products or services from third-party e-commerce merchants.

8.      Defendants are aware of complaints regarding their fraudulent, misleading, deceptive, and unlawful business practices by virtue of several consumer watchdog authorities, consumers themselves, and now through the investigation of the Committee, which requested and obtained documents from Defendants related to their online business practices and has requested documents from other companies which have apparently engaged in the online sales

---

[7] *Id.* at p. 30.

[8] *Id.*

4

practices being investigated by the Committee.[9]

9.      Commenting on the work of the Committee, the Attorney General of Connecticut

(where Defendants have their principal place of business) also issued a press release on

November 17, 2009, which stated:

> I am pleased that Sen. Jay Rockefeller and his committee have joined the
> fight against bogus membership clubs that trick consumers into enrolling
> and fail to produce promised discounts and deals.  I welcome Sen.
> Rockefeller as an ally in my longstanding fight against membership club
> abuses.
>
> I successfully sued Affinion, formally known as Trilegiant, in 2006 for
> deceiving consumers, winning $14.5 million in restitution and penalties.
> My office is investigating Vertrue and Webloyalty for similar abuses, as
> well as whether Affinion is complying with its settlement with my office.
> I will take legal action if justified by the results of our investigations.
>
> I urge consumers solicited online or by mail to shun these membership
> clubs. They use trickery to enroll consumers and then fail to deliver
> promised benefits.
>
> I will continue to vigorously and aggressively fight membership club
> scams, suing for restitution and penalties when appropriate.

10.      Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated

whose credit, debit or other accounts have been assessed "membership fee" charges as a

result of Defendants' unlawful, unfair and deceptive scheme, bring these claims against

Defendants for violations of (a) RICO, 18 U.S.C. §§ 1961-1968; (b) ECPA, 18 U.S.C. §§ 2510,

*et seq.*; (c) UCL, §§ 17200, *et seq.*; (d) FAL, §§ 17500, *et seq.*; (e) CLRA, §§ 1750, *et seq.*; (f)

CUTPA §§ 42-110a *et seq.*; and (g) unjust enrichment.  Plaintiffs seek, *inter alia*: an order

certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure; an order

appointing Plaintiffs and their counsel of record to represent the Class; restitution, statutory

damages, and injunctive and declaratory relief on behalf of Plaintiffs and the Class; and any such

---

[9] *Id.* at p. 13.

further relief as the Court may deem proper under the circumstances.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331, because it arises under the laws of the United States, specifically 18 U.S.C. §§ 1961-1968

and 18 U.S.C. § 2510, *et seq*.  This Court also has jurisdiction over this class action pursuant to

28 U.S.C. § 1332, because in the aggregate, the claims of Plaintiffs and the members of the Class

exceed the jurisdictional minimum amount in controversy of $5,000,000.00, exclusive of costs and

interests.  28 U.S.C. § 1332(d)(2)(A) and § 1332(6).  The Court has supplemental jurisdiction

over Plaintiffs' state law claims for violations of California's UCL, §§ 17200, *et seq*., FAL, §§

17500, *et seq*., CLRA, §§ 1750, *et seq*., and CUTPA §§ 42-110a *et seq*., pursuant to 28 U.S.C. §

1367.  Additionally, certain members of the putative Class are citizens of a state different from

that of Defendants.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

part of the events giving rise to the claims occurred in this District, Defendants are domiciled in

this District, and/or because Defendants have sufficient contacts with this District.

## PARTIES

13.     The Schnabels are, and at all relevant time were, residents of Pleasant Hill,

California.  The Schnabels, thus, are citizens of California.  On or about September 21, 2009, the

Schnabels' United Mileage Plus credit card was charged $14.99 by Trilegiant.  The transaction

description for that charge, and five subsequent and identical monthly charges, was

"TLG*GREATFN89718058 877-709-0966 CT."  The final charge, also of $14.99, occurred on

February 19, 2010.  The Schnabels noticed the recurring charge for the first time on or about

March 9, 2010 and contacted Defendants to stop the charges.  The Schnabels were initially told

by Defendants that they must have responded to a rebate request and that membership information had been sent to their home and e-mail addresses. None of this was accurate. At no time did the Schnabels provide their consent for their credit card to be used for enrollment in any of Defendants' membership programs. The Schnabels asked to speak to a supervisor, who cancelled their membership and promised to reimburse them for four of the six months for which they were charged. Despite the Schnabels' repeated request for a full refund, Defendants refused to refund two of the six months for which they were unlawfully charged.

14.     Mr. Schnabel is, and at all relevant time was, a resident of Pleasant Hill, California. Mr. Schnabel, thus, is a citizen of California. On or about December 20, 2008, Mr. Schnabel's CitiDiamond Preferred credit card was charged $11.99 by Trilegiant. The transaction description for that charge, 30 subsequent and identical monthly charges, was "TLG*GREATFN54169658." The final charge, also of $11.99, occurred on May 21, 2010. Mr. Schnabel noticed the recurring charge for the first time in March 2010 and contacted Defendants shortly thereafter to stop the charges, and was told that he had "signed up" through a Priceline.com transaction. At no time, however, did Mr. Schnabel provide his consent for his credit card to be used for enrollment in any of Defendants' membership programs. Further, Mr. Schnabel never received any confirmation or membership materials related to his purported membership. After speaking with Defendants' representatives, Mr. Schnabel was promised reimbursement for only four of the 30 months for which he was charged by Defendants but was denied a full refund.

15.     Affinion is a corporation established under the laws of the State of Delaware, with its principal place of business located in Norwalk, Connecticut. Affinion, thus, is a citizen of Delaware and Connecticut. Affinion markets club memberships under the auspices

of its subsidiary, Trilegiant.

16.     Trilegiant is a corporation established under the laws of the State of Delaware, with its principal place of business located in Norwalk, Connecticut, and is a subsidiary of Affinion. Trilegiant, thus, is a citizen of Delaware and Connecticut.

## ALTER EGO/AGENCY/CONSPIRACY/AIDING AND ABETTING

17.     At all relevant times, each of the Defendants was a principal, agent, alter ego, joint venturer, partner, and/or affiliate of the other Defendant, and in doing the acts alleged herein, was acting within the course and scope of that principal, agent, alter ego, joint venture, partnership, and/or affiliate relationship. Each Defendant had actual and/or constructive knowledge of the acts of the other Defendant, and ratified, approved, joined in, acquiesced, and/or authorized the wrongful acts of each co-Defendant and/or retained the benefits of said wrongful acts.

18.     Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendant, and others, in perpetrating their unlawful, unfair, and deceptive scheme on Plaintiffs and the proposed Class, as alleged herein. In taking action, as particularized herein, to aid, abet, encourage, and substantially assist the commissions of the wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing herein alleged.

19.     Defendants, and each of them, conspired with each other and with others, to perpetrate the unlawful, unfair, and deceptive scheme on Plaintiffs and the proposed Class, as alleged herein. In doing so, each of the Defendants has performed acts and/or made statements in furtherance of the said conspiracy, common enterprise, and/or common course of conduct. All

Defendants were direct, necessary, and substantial participants in the conspiracy, common enterprise, and/or common course of conduct complained of, and each Defendant was aware of its overall contribution to and furtherance of the said conspiracy, common enterprise, and/or common course of conduct.

## STATEMENTS OF FACTS

**A.     Defendants' "Membership" Programs**

20.     Online shopping has exploded within the last 15 years.  Shopping on the Internet has become fairly commonplace for goods, services, and information.

21.     With the growth of the use of the Internet to make online purchases, consumers have been subjected to Internet scams such as "cramming" and "data passing."  The term "cramming" refers to the practice of imposing unauthorized charges on customer billing statements.  The term "data passing" refers to the practice of automatically and unilaterally transferring the credit or debit card information of consumers from an online merchant to an unfamiliar third party for the purpose of enrolling and charging consumers "membership fees" for membership into a club belonging to the third party.

22.     Trilegiant, as a subsidiary, division, operational department, and/or agent of Affinion, is in the business of marketing and selling membership programs for goods and services ("Membership Programs").  These Membership Programs allegedly provide consumers the opportunity to obtain information and/or discounts on various goods and services for a periodic "membership fee," ranging from between $8.99 monthly to $480.00 annually. Defendants assess this "membership fee" against consumers' credit, debit, or other accounts on a monthly, bi-monthly, semi-annual, and/or annual basis.  The membership programs marketed and sold by Defendants include, *inter alia*:

- **Shoppers Advantage**:  A catalog and on-line shopping membership.

- **Travelers Advantage**:  A travel services membership.

- **AutoVantage**:  An automobile purchasing information, dealer referral, and discount auto repair membership.

- **Buyers Advantage**:  A retail product warranty extension/product repair membership.

- **Privacy Guard (a/k/a "Credit Alert")**:  A credit report and credit monitoring membership.

- **HealthSaver**:  A dentist referral and discount prescription drug/ medical services membership.

- **Netmarket.com**:  A catalog and on-line shopping membership.

- **Great Fun**:  An entertainment-coupon membership.

23.    Defendants market and sell these Membership Programs to consumers in this judicial district and through the United States.

**B.    Defendants' Practice of Unlawfully, Unfairly, and Deceptively Enrolling Consumers in their Membership Programs**

24.    In connection with Defendants' Membership Programs and to further the marketing and sales efforts related thereto, Defendants enter into agreements with financial institutions, retailers, telephone service providers, car rental companies, mortgage lenders, hotels, cable companies, and Internet service providers – many of whom are Fortune 500 companies – including, *inter alia*, 1-800-Flowers.com, AirTran Airways, Priceline.com, Avon, Hotwire.com, and Classmates.com.  A significant part of these partner companies' business is devoted to e-commerce.

25.    Pursuant to the marketing and sales agreements entered into between Defendants and e-commerce merchants, in exchange for valuable compensation, Defendants obtain personal identifying, financial, and billing information about the e-commerce merchants' customers.

Defendants then use this private consumer information to market, sell, and charge consumers for Defendants' Membership Programs.  Routinely, Defendants add the partner merchant's name to Defendants' marketing materials, solicitations, and charges, giving the false, deceptive, and/or misleading appearance that a Defendant membership program is sponsored, marketed, sold, or charged by the partner, when in fact it is not.

26.     Defendants market these memberships through several means, including direct mail solicitations, Internet advertisements, and telemarketing solicitations – all of which uniformly fail to disclose to or otherwise alert consumers that they have been placed in one (or more) of Defendants' Membership Programs, or that Defendants have charged a "membership fee" against the consumer's credit, debit, or other account without the consumer's valid authorization or consent.

27.     In addition, using the personal identifying and financial information obtained from partner merchants, Defendants routinely mail checks or other modest premiums to consumers, which are represented by Defendants to be "rewards" for being valued customers. Cashing such checks or accepting such "free" or "no charge" premiums causes consumers to be enrolled in one (or more) of Defendants' Membership Programs.  Defendants fail to disclose to consumers that such actions will cause Defendants to enroll the consumer into one (or more) of Defendants' Membership Programs, and that periodic charges for the membership will be automatically charged to the consumer's credit, debit, or other account by Defendants, unless the consumer affirmatively cancels the membership within a limited period of time, generally 30 days.  Defendants also fail to disclose that, at the end of the membership period, Defendants automatically renew consumers in the membership(s), and will automatically charge the consumer's credit, debit, or other account for successive membership periods, in perpetuity, and

without the consumer first authorizing or consenting to such charges, unless the consumer takes affirmative steps to successfully cancel the membership(s).

28.     Using the personal identifying and financial information obtained from partner merchants, Defendants also use standardized telemarketing, Internet advertising, and other solicitation techniques to urge consumers to accept Defendants' offers for "free" trial memberships.  Defendants fail to disclose that, at the expiration of the "free" trial period, the consumer's credit, debit or other account will be charged automatically for a one-year membership without the consumer's authorization.  Defendants also fail to disclose that they automatically renew the membership(s), and automatically charge the consumer's credit, debit, or other account for successive membership periods, in perpetuity, unless the consumer takes affirmative steps to successfully cancel the membership(s).

29.     As a result of these unlawful, unfair, and misleading practices, consumers are wrongfully and deceptively charged by Defendants for Membership Programs, even though the consumers do not knowingly consent to purchasing or being billed for Defendants' memberships, and do not provide Defendants with valid authorization, in writing or otherwise, to withdraw funds from or assess charges against the consumer's credit, debit, or other account.

**C.     Government Investigation of Defendants' Marketing Practices**

30.     The aggressive sales tactics practiced by Defendants, and others, became the subject of an investigation by the Committee launched in May 2009.  As part of that investigation, the Committee collected and reviewed thousands of pages of documents produced by three online internet marketers, including Defendants.  In the course of its investigation, the Committee reviewed approximately 80,000 pages of documents from Defendants.  In addition, requests for information were sent on November 6, 2006, to 16 companies who partnered with

the online Internet marketers, including Defendants.

31.    Financial information provided to the Committee by the three online marketers showed that, together, the three companies generated over $1.4 billion in revenue from Internet customers who were charged for Membership Programs.

32.    The key preliminary findings of the investigation are:

- Using aggressive sales tactics to enroll consumers in unwanted membership clubs is a billion-dollar business.

- Hundreds of well-known websites and online retailers have earned hundreds of millions of dollars employing aggressive online sales tactics.

- Defendants (along with the other two online marketers) have knowingly charged millions of consumers for services the consumers do not use and are not aware they have purchased.

- Defendants' (along with the other two on-line marketers) customer service centers are almost entirely dedicated to handling the large volume of calls from angry and confused consumers requesting cancellations.

- E-commerce companies know that their customers are being harmed by the aggressive sales tactics of Defendants (and the other two on-line marketers).

## CLASS ACTION ALLEGATIONS

33.    Plaintiffs bring this action on behalf of themselves and all other similarly situated members of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This class action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23 and the provisions therein.

34.    The proposed Classes are as follows:

### The Nationwide Class

All persons and entities, within the United States, who, from February 15, 2008 through the present, were charged for one or more Trilegiant membership program(s).

**The California Subclass**

> All people who, while residing in the State of California, were charged for one or more Trilegiant membership program(s) during the period of February 15, 2008 through the present.

35.     Excluded from the Class and Subclass (collectively "Classes") are (a) Defendants, any entity or division in which any of the Defendants has a controlling interest, and its/their legal representatives, officers, directors, assigns and successors; and (b) this Court and any member of Your Honor's immediate family and courthouse staff.

36.     The members of the Classes are so numerous that joinder of all Class members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs believe that there are thousands of members in the proposed Classes.  Members of the Classes can be identified from records maintained by Defendants.

37.     Plaintiffs' claims are typical of the claims of the other members of the Classes. All members of the Classes have been and/or continue to be similarly affected by Defendants' wrongful conduct as complained of herein.  Plaintiffs have no interests adverse to those of the Classes.

38.     Defendants' deceptive practices are both significant and widespread.  Consumers have made the following representative complaints about Defendants' practices:

> I found the charge for 69.99 on my recent Chase MasterCard statement from TLG*EVRYDAYVAL, which I did not recognize. * * * I too did not recall signing up for every day values and certainly did not receive any services for the 349.95 that had been charged to my card over the past 2 years.  * * *
>
> **Jerry of Portland, OR**
>
> I had received a notice regarding a payment of 69.99 being taken from my credit card account, and since I had no idea who the people are, or what I was being charged for, * * * and [I] have been being automatically billed every six months for a membership

14

for which I have received absolutely no benefit.  I never received a membership package indicating what discounts might be available or how to get them * * *.

These scam operators who feel they have a right to automatically charge your credit card for something you do not receive, should be put out of business. Their approach is deceptive and they make interest on money that is taken from unsuspecting consumers for programs from which they receive no benefit. Basically they are thieves.

**Sharon of Kingman, AZ**

From what i'm seeing all over the 'Net, it looks like I'm not the first (or only) person to get scammed by these folks. Last night I noticed that I've been charged 12.99 a month for the past three months from "TLGGRTFUN". After doing some searching (and it didn't take much) I finally learned who these folks were.  I never heard of Trilegiant before, nor "Great Fun".  I certainly didn't ask to become a "member", at least not intentionally.  I don't even know what they actually sell.  I certainly didn't receive anything for my 38.97.

**Ian of Hopatcong, NJ**

I was enrolled in Trilegiant's Great Fun after signing up with truecredit.com to receive my credit report. I called Trilegiant to complain and cancel; the representative said that she would send me a refund check, but that I cannot cancel until I cash it. She assured me that the check would arrive shortly. Two more monthly subscription fees were posted to my credit card before I finally received this "refund." The refund was no refund at all; it was a check that, if I cashed it, would enroll me in another of Trilegiant's clubs: Health Saver.

**Aimee of Minneaplis, MN**

Getting bill by GreatFun for 11.99 per month on Discover.  Never heard of it until my wife asked what it was. Called there customer service. My approach is I never signed, never heard of it and never used it and want full restitution for the whole amount about 9 months.

**Gwhemo of Jefferson City, MO**

I notice a 12.99 fee on a bank account that I never remember

authorizing anyone to take... After several phone calls my wife and i learned that I supposedly signed up to get a free credit report and trial membership, that if not cancelled would cost 12.99 per month. I told the company I had never signed up for any such thing.  They assured me they had a copy of the signature on file, where I had signed up for it.

I demanded that they send me the signature card showing I signed up for this service. To date I have not received that signed authorization from Trilegiant. 12.99 for about 5 months charged to my account.  A 35 overdraft fee that the charge caused and a 30 stop payment that I had to do to keep the company from charging my account any further.

**David of Portsmouth, VA**

I have now been billed 3 different transactions on my Discover card from this company that has other complaints on them. 2/10/10 84.99 2/17/10 69.99 2/18/10 69.99 I have never done business with this company nor have ever authorized any charges from them.

**Helen of Liberty Hill, TX**

I recently looked at my checking acount statement and just found out after I called Great Fun's 800 phone # that they have been charging 12.99 a month FROM my checking account for 14 months! For a membership I NEVER signed up for. I want my oney back and had to cancel/change my ATM debit card. These people are crooks! * * *

**Ann of Santa Rosa, CA**

A checkcard debit in the amount of 13.99 had been made by TLG Buyers. I did not know what company it was nor what services provided. What I did know was that I had not purchased anything from this company and had not authorized them to debit my account. In response to this discovery, I asked the representative to pull up past account statements, on which I found several more debits from TLG Buyers for the same amount.

**Elizabeth of Dallas, TX**

Have been deployed for the last eight months and finally got a chance to look at a credit account I have. As far back as I have the ability to look, this company has been charging me 11.99 per month for SOMETHING, although I have no idea what that might

be. I have to try and resolve this from 8000 miles away, which is NOT easy. I could use all the help I can get!

**Darren of Camp Patriot, Kuwait**

11.99 charge on my Chase Credit Card for the past four months. I have no idea who this is or how/ why I am being charged.

**Fred of Ransom Canyon, TX**

39.     Plaintiffs will fairly and adequately protect the interests of the members of the

Classes and have retained counsel competent and experienced in consumer class action lawsuits

and complex litigation.

40.     Common questions of law and fact exist as to all Class members and predominate

over any questions wholly affecting individual Class members.  Among the questions of law and

fact common to the Classes are:

> (a)     Whether Defendants omitted, concealed, or misrepresented facts concerning enrollment in Membership Programs, and whether such omissions, concealments, or misrepresentations were intended to and did mislead and deceive consumers;
>
> (b)     Whether Plaintiffs and Class members' credit, debit, and/or charge information was wrongfully accessed or caused to be accessed by a party who was not authorized to access Plaintiffs and Class members' private credit, debit, or charge card information;
>
> (c)     Whether the acts and omissions of Defendants violated Sections 1962(c) and (d) of RICO, 18 U.S.C. § 1962(c) and (d);
>
> (d)     Whether Defendants violated Section 2510 of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.*, for intentionally accessing and/or transmitting personal and private information of Plaintiffs and Class members that was electronically communicated over the Internet and/or contained on their computers, or using a device to do so;
>
> (e)     Whether Defendants violated Section 2510 of the Electronic Communications Privacy Act for intentionally disclosing and/or using Plaintiffs' and Class members' electronic communications;

(f)     Whether the acts and omissions of Defendants violated California
Business and Professions Code §§ 17200, *et seq*., California Business and
Professions Code §§ 17500, *et seq*., and California Civil Code §§ 1750, *et
seq*.;

(g)     Whether Defendants obtained the bank, debit, or credit card information
of Plaintiffs and the Subclass members through fraud, misrepresentation
or deceptive practices;

(h)     Whether the acts and omissions of Defendants violated Connecticut
General Statutes §§ 42-110a, *et seq*.;

(i)     Whether Defendants committed unfair and deceptive acts and practices
in surreptitiously charging Plaintiffs and the Subclass for enrollment in
their Membership Programs;

(j)     Whether treble damages should be awarded to Plaintiffs and the members
of the Class;

(k)     Whether Plaintiffs and the Class have sustained damages and loss as a
result of Defendants' actions, and the nature and extent of damages to
which Plaintiffs and the other members of the Class are entitled;

(l)     Whether Defendants have been unjustly enriched at the expense of
Plaintiffs and the Class; and

(m)     Whether Plaintiffs and the Class are entitled to injunctive and/or
declaratory relief.

41.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy, as joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it extremely difficult for Class members to individually redress the

wrongs done to them.  There will be no difficulty in managing this action as a class action.

42.     Plaintiffs reserve the right to modify the definitions of the Classes as future

discovery and/or investigation warrant.

## FIRST CAUSE OF ACTION
### (For Violations of Section 1962(c) of RICO – On Behalf of the Class)

43.     The preceding paragraphs of this Complaint are realleged and incorporated by reference.  This claim, which asserts violations of Section 1962(c) of RICO, 18 U.S.C. § 1962(c), is asserted against all Defendants.

**The RICO Enterprise**

44.     At all relevant times, Defendants, and each of them, unlawfully, knowingly and intentionally conducted and participated, directly and/or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity as set forth below, in violation of Section 1962(c) of RICO, 18 U.S.C. § 1962(c).

45.     Defendants, together with e-commerce merchants, formed an association-in-fact for the common purpose of unlawfully, fraudulently, and deceptively marketing and selling Defendants' Membership Programs to consumers, including Plaintiffs and Class members.  In order to carry out their common purpose, Defendants and their partner merchants established, directed, and/or participated in the operation and management of an ongoing, independent structure and mechanism for extracting from consumers unauthorized "membership fees" related to Defendants' Membership Programs.  Said structure worked, and continues to work, as follows:  In exchange for valuable compensation, Defendants are provided with consumers' personal identifying and financial information by the partner merchants, without consumers' authorization or consent.  Defendants, in turn, use this information to enroll consumers in their Membership Programs, again without consumers' authorization or consent, and then charge them substantial unauthorized "membership fees," ranging between $8.99 per month and $480.00 annually.   At all times, Defendants and their partner merchants knew and intended to defraud consumers of "membership fees" by means of this independent structure, thereby maximizing

their respective profits in the process. This association-in-fact constitutes an "enterprise" within the meaning of Section 1961(4) of RICO, 18 U.S.C. § 1961(4).

46.     At all relevant times, Defendants, and each of them, were "person(s)," as that term is defined in Section 1961(3) of RICO, 18 U.S.C. § 1961(3), and are legally distinct from the enterprise.

47.     At all relevant times, the enterprise as described herein was engaged in, and its activities affected, interstate commerce within the meaning of Section 1962(c) of RICO, 18 U.S.C. § 1962(c).

**Racketeering Activity and Predicate Acts**

48.     Defendants, and each of them, engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in acts that constitute a violation of the following statutes:  18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1341 (mail fraud).

49.     Defendants, and each of them, together with the e-commerce merchants, did willfully and with the purpose to defraud consumers, including Plaintiffs, and to obtain consumers' money or property by means of false pretenses, engage in fraudulent conduct constituting wire and mail fraud, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1341, by engaging in the following acts:

a.     Forming and maintaining the RICO enterprise;

b.     Fraudulently concealing from consumers that they have been unilaterally enrolled in Defendants' Membership Programs without their authorization or consent;

c.     Fraudulently concealing from consumers that they have been, and will continue to be, charged for their membership in Defendants' Membership Programs;

d.     Fraudulently concealing from consumers the fact of, or amount of, the recurring charges they will incur by virtue of their enrollment in Defendants' Membership Programs;

e.    Fraudulently concealing from consumers the terms and conditions relating to Defendants' Membership Programs;

f.    Fraudulently concealing from consumers the benefits (if any), obligations, features, components, or elements of Defendants' Membership Programs;

g.    Fraudulently concealing from consumers the manner of accessing and/or using Defendants' Membership Programs; and

h.    Fraudulently concealing from consumers that Plaintiffs and Class members' credit, debit, or charge cards and other personal, private, and confidential information is transferred by e-commerce merchants to Defendants for the purpose of systematically and unilaterally charging Plaintiffs and the Class for enrollment in Defendants' Membership Programs.

50.    By virtue of the foregoing fraudulent activities, Defendants have engaged in a pervasive pattern of unlawful and unfair business practices, causing harm to Plaintiffs and the members of the Class. Defendants' fraudulent conduct, as described above, constitutes a scheme or artifice to defraud Plaintiffs and Class members.

51.    In furtherance of and for purposes of executing the foregoing fraudulent and illegal course of conduct and scheme to defraud, Defendants, together with the e-commerce merchants, used, and caused to be used, interstate wire and mail communications to transmit or disseminate false, fraudulent, and misleading communications and information, in violation of the wire and mail fraud statutes, 18 U.S.C. §§ 1343 and 1341. Defendants' use of interstate wire facilities includes text and images relating to Defendants' Membership Programs which appear on their partner merchants' websites, including, *inter alia*, (1) "interstitial sales" offer pages appearing between the checkout page and the confirmation page of the e-commerce merchant from whom the consumer intends to make a purchase, (2) "pop up" windows appearing on top of the confirmation page, and (3) hyperlinks or "banners" that are included directly on the

confirmation page itself.[10]   Defendants' use of interstate mail facilities includes, *inter alia*, the mailing of checks and other modest premiums to consumers which Defendants represent to be "rewards" for being valued customers.

52.   All of the interstate wire and mail communications were made in furtherance of Defendants' scheme to defraud Plaintiffs and Class members and to obtain their money or property by means of false pretenses.

53.   Each interstate wire and mail communication that was made in furtherance of Defendants' scheme to defraud Plaintiffs and Class members and to obtain their money or property by means of false pretenses, constitutes a separate and distinct act of "racketeering activity," as that term is defined in Section 1961(1) of RICO, 18 U.S.C. § 1961(1).

54.   Defendants, together with the e-commerce merchants, each committed and/or abetted the commission of significantly more than two of these acts of "racketeering activity." The predicate acts are common to Defendants' scheme to conduct the affairs of the RICO enterprise, and the acts are continuing and threatening to continue indefinitely.  These predicate acts are chargeable and indictable, as required under Section 1961(1) of RICO, 18 U.S.C. § 1961(1).

55.   The racketeering activity was and is related by virtue of common participants, common victims (Plaintiffs and Class members), a common structure and method of commission, a common purpose, and a common result of enrolling and charging consumers for unknown and unwanted Membership Programs, thereby defrauding Plaintiffs and Class members of significant monies and unjustly enriching Defendants and their collaborators.

56.   The racketeering activity is distinct from the RICO enterprise.  The enterprise, as

---

[10] November 16, 2009 Staff Report, pgs. 2-3.

an association-in-fact, was formed to facilitate the marketing and sale of Defendants' Membership Programs. The racketeering activity – Defendants' and their collaborators' practice of unlawfully, fraudulently, and deceptively collecting unauthorized "membership fees" from consumers through repeated acts of wire and mail fraud – enables Defendants and their collaborators to profitably maintain and conduct the enterprise for the purpose of defrauding consumers.

**Causation**

57.     As a direct and proximate result of the racketeering activity, Plaintiffs and Class members were enrolled in and charged for Membership Programs, on an ongoing basis, at the cost of between $8.99 per month and $480.00 annually, plus any fees charged by financial institutions when Defendants' activities resulted in the consumer's account being overdrawn. Thus, Plaintiffs and Class members have been injured in their business or property and, therefore, have standing to sue Defendants and recover damages and costs of bringing this class action under Section 1964(c) of RICO, 18 U.S.C. § 1962(c).

58.     By virtue of their violations of Section 1962(c) of RICO, 18 U.S.C. § 1962(c), Defendants, and each of them, are jointly and severally liable to Plaintiffs and Class members for three times the damages that Plaintiffs and Class members suffered as a result of Defendants' scheme to defraud consumers.

**SECOND CAUSE OF ACTION**
**(For Violations of Section 1962 (d) of RICO – On Behalf of the Class)**

59.     The preceding paragraphs of this Complaint are realleged and incorporated by reference. This claim, which asserts violations of Section 1962(d) of RICO, 18 U.S.C. § 1962(d), is asserted against all Defendants.

60.     Defendants willfully combined, conspired and agreed to conduct and participate,

23

directly and/or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of Section 1962(c) of RICO, 18 U.S.C. § 1962(c), thereby violating Section 1962(d) of RICO, 18 U.S.C. § 1962(d).  This racketeering activity consisted of repeated violations of the federal wire and mail fraud statutes.

61.     Defendants knew of, agreed to, and acted in furtherance of the overall objective of the conspiracy by, *inter alia*, entering into marketing and sales agreements with e-commerce merchants that created the structure, mechanism, and financial incentive for defrauding consumers of "membership fees" relating to Defendants' Membership Programs.

62.     As a direct and proximate result of the conspiracy to commit the predicate acts of wire and mail fraud in violation of 18 U.S.C. § 1962(d) as detailed above, Plaintiffs and Class members were enrolled in and charged for Membership Programs, on ongoing basis, at the cost of between $8.99 per month and $480.00 annually, plus any fees charged by financial institutions when Defendants' activities resulted in the consumer's account being overdrawn.  Thus, Plaintiffs and Class members have been injured in their business or property and, therefore, have standing to sue Defendants and recover damages and costs of bringing this class action under Section 1964(d) of RICO, 18 U.S.C. § 1962(d).

63.     By virtue of their violations of Section 1962(d) of RICO, 18 U.S.C. § 1962(d), Defendants, and each of them, are jointly and severally liable to Plaintiffs and Class members for three times the damages that Plaintiffs and Class members suffered as a result of Defendants' conspiracy to defraud consumers.

## THIRD CAUSE OF ACTION
### (For Violations of Section 2510, *et seq.* of the ECPA – On Behalf of the Class)

64.     The preceding paragraphs of this Complaint are realleged and incorporated by reference.  This claim, which asserts violations of the ECPA, 18 U.S.C. § 2510, *et. seq.*, is

asserted against all Defendants.

65.     The ECPA prohibits any person from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2510(1)(a).  "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).  "Intercept" is defined as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

66.     During the Class Period, Plaintiffs and Class members transmitted their personal, private, and confidential bank, debit, and/or credit card information and other related billing information from their computers to the websites of various e-retailers, which constitutes "electronic communications" within the meaning of 18 U.S.C. § 2510(12).  Plaintiffs and Class members made these transmissions to purchase products and/or services which did not include membership in the Membership Programs of Defendants.

67.     Without notice to Plaintiffs and Class members and in furtherance of their fraudulent, deceptive, and unlawful business practice of enrolling and charging unwitting consumers for Membership Programs as alleged in this Complaint, Defendants intentionally intercepted the electronic communications of Plaintiffs and Class members by means of electronic devices, including, but not limited to their computers, in violation of 18 U.S.C. § 2510(1)(a).

68.     Pursuant to 18 U.S.C. § 2520, Plaintiffs and the Class are entitled to preliminary, equitable and declaratory relief, in addition to statutory damages of the greater of $10,000 or

$100 per day for each day of violation, actual and punitive damages, reasonable attorneys' fees and other litigation costs, and Defendants' profits obtained from the above-described violations.

## FOURTH CAUSE OF ACTION
**(For Violations of Connecticut Unfair Trade Practices Act – On Behalf of the Class)**

98.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

99.     Plaintiffs are, and at all pertinent times, were, persons within the meaning of CUTPA (C.G.S. § 42-110a, *et seq.*).

100.    Defendants used unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentation, in violation of CUTPA, in connection with the marketing and implementation of their Membership Programs, as alleged above.

101.    As a result of Defendants' fraudulent and unfair business practices, Plaintiffs and other members of the Class have suffered ascertainable losses within the meaning of C.G.S. § 42-110g(a) and have been damaged by Defendants' unlawful acts.

102.    Defendants' fraudulent and deceptive acts and practices present an ongoing threat and likelihood of deception to members of the public and constitute a fraud upon the members of the public, as well as unfair, unlawful and deceptive acts, in violation of CUTPA.

103.    At all pertinent times, in violating CUTPA, Defendants acted intentionally or, at a minimum, with reckless disregard for Plaintiffs' rights and the rights of Class members.

104.    As a result of Defendants' fraudulent and deceptive trade acts and practices, Plaintiffs and the members of the Class have been damaged.

105.    The foregoing acts and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*,

monies paid for the Membership Programs, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## FIFTH CAUSE OF ACTION
### (For Violations of the CLRA – On Behalf of the Subclass)

106.    Plaintiffs, on behalf of themselves and the Subclass, incorporate by reference each allegation set forth above as if fully set forth herein.

107.    Defendants are "persons" within the meaning of California Civil Code §§ 1761(c) and 1770, and sell "goods" and "services" within the meaning of California Civil Code §§ 1761(b) and 1770.

108.    Plaintiffs and other Subclass members are "consumers" within the meaning of California Civil Code §§ 1761(d) and 1770.  Defendants' memberships are "goods" and "services" within the meaning of California Civil Code § 1761(a).

109.    Plaintiffs and other Subclass members' act of accepting a "free" trial of one (or more) of Defendants' Membership Programs, and Defendants' act of assessing and collecting "membership fees" for their Membership Programs, constitute "transactions" within the meaning of Civil Code § 1761(e).

110.    Defendants' actions as alleged herein occurred in the conduct of trade or commerce directly or indirectly affecting the people of the State of California, including residents of this judicial district, through their marketing and sale of Defendants' memberships, as well as the people of all of the other 50 states and the District of Columbia.

82.    Defendants' acts and practices, as herein described, violate Civil Code §§ 1770 (a)(1), (3), (5), (9), (14), and (16), in that Defendants have, among other things: (a) passed off their own memberships as if they were the goods of Defendants' partner companies; (b) represented that their memberships have sponsorship, approval, characteristics, benefits, and/or

qualities that they do not have; (c) advertised, marketed, and promoted their memberships with the intent not to sell them as advertised; (d) represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; and/or (e) represented that the subject of a membership or trial membership transaction has been supplied in accordance with a previous representation, when it has not.

83.     In addition, to the extent that purported membership agreements, drafted by Defendants, contain choice of law and arbitration provisions, those provisions, if enforced, would unfairly, unlawfully, fraudulently, and unconscionably require consumers to give up their constitutional and statutory rights to a civil court and/or jury trial, and submit their complaint or dispute to arbitration in the State of California, without their voluntary, knowing, and affirmative consent. Defendants' choices of law and arbitration provisions are adhesive, do not fall within the reasonable expectations of Plaintiffs and/or the proposed California Subclass, and are unconscionable and unduly oppressive. Defendants' choice of law and arbitration provisions also unlawfully, unfairly, fraudulently, and unconscionably deprive Plaintiffs and/or the members of the Subclass of their rights to a public forum for resolution of legal claims and to participate in class actions. Defendants' choice of law and arbitration provisions also unlawfully, unfairly, fraudulently, and unconscionably impose prohibitive costs upon Plaintiffs and/or the Subclass, are the result of unequal bargaining power and are violative of public policy and § 1770(a)(17) of the CLRA, which prohibits as an unfair method of competition and unfair or deceptive act or practice, the following: "Inserting an unconscionable provisions in [a] contract."

84.     Plaintiffs, on behalf of themselves and the Subclass, are entitled to and seek an injunction prohibiting Defendants from engaging in the acts and practices complained of,

and recovery of their attorneys' fees and costs.

85.     In addition, having complied with notice provision prescribed in California Civil Code § 1782(a), and the 30-day period described therein having expired, Plaintiffs, on behalf of themselves and the California Subclass, are entitled to and seek actual damages, punitive damages, restitution, and any other relief the Court deems proper, pursuant to California Civil Code § 1780.  A true and correct copy of the CLRA Declaration is attached as Exhibit "1."

**SIXTH CAUSE OF ACTION**
**(For Violations of the FAL – On Behalf of the Subclass)**

86.     Plaintiffs, on behalf of themselves and the California Subclass, incorporate by reference each allegation set forth above as if fully set forth herein.

87.     Plaintiffs have suffered injury in fact and lost money and/or property, including, but, not limited to monies unlawfully, unfairly, and deceptively charged against their credit card accounts by Defendants, as alleged herein above, and accordingly have standing to bring these claims pursuant to California Business and Professions Code §§ 17203, 17205, and 17500.

88.     Defendants' actions as alleged herein occurred in the conduct of trade or commerce directly or indirectly affecting the people of the State of California, including consumers residing within this judicial district, as well as the people of all of the other 50 states and the District of Columbia, through their advertisements, solicitations, marketing, telemarketing, and representations concerning Defendants' Membership Programs.

89.     Defendants, through the actions described herein, caused to be made or disseminated before the public in California, through many advertising, solicitation, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue, misleading to consumers, Plaintiffs, and the Subclass.

Case 3:10-cv-00957-VLB   Document 1   Filed 06/17/10   Page 30 of 37

90.     Plaintiffs, on behalf of themselves and all others similarly situated, are entitled to

and seek an injunction prohibiting Defendants from engaging in the acts and practices

complained of, and recovery of their attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
### (For Violations of the UCL – On Behalf of the Subclass)

91.     Plaintiffs, on behalf of themselves and the Subclass, incorporate by reference each

allegation set forth above as if fully set forth herein.

92.     Plaintiffs assert this claim for violations of the UCL on behalf of themselves and

the Subclass.  Plaintiffs have suffered injury in fact and lost money and/or property, including,

but not limited to monies unlawfully, unfairly, and deceptively charged against their credit

and/or debit card accounts by Defendants, as alleged herein above, and accordingly have

standing to bring these claims pursuant to California Business and Professions Code §§ 17203,

17204.

93.     At all relevant times herein, there was in effect California's Unfair Competition

Statute, Cal. Bus. & Prof. § 17200, which states in pertinent part:

> As used in this chapter, unfair competition shall mean and include any unlawful, unfair or
> fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising
> and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of
> Division 7 of the Business and Professions Code).

94.     Defendants' acts and practices as set forth herein constitute unlawful business

practices in violation of Business & Professions Code §§ 17200, *et seq.*, because they violate the

federal RICO and ECPA statutes, 18 U.S.C. §§ 1691-1968 and 18 U.S.C. §§ 2510, *et seq.*,

respectively, as well as California's CLRA and FAL statutes, Cal. Civ. Code §§1750, *et seq.* and

Business & Professions Code §§ 17500, *et seq.*, respectively.

95.     Defendants' acts and practices, described above, constitute unfair and fraudulent

30

business practices under California Business & Professions Code §§ 17200, *et seq.*, in that Defendants' justifications for engaging in such practices are outweighed by the gravity of the consequences for consumers; the practices are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; and/or the practices deceive or have the capacity to deceive consumers.

96.      Plaintiffs, on behalf of themselves and the California Subclass, seek an injunction prohibiting Defendants from engaging in the acts and practices complained of, restitution of all charges improperly assessed to consumers as a result of such acts and practices, disgorgement of all profits and compensation improperly obtained by Defendants as a result of such acts and practices, attorneys' fees and costs, and any such other and relief as the Court may deem proper.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment – On Behalf of the Class)

97.      The preceding paragraphs of this Complaint are realleged and incorporated by reference.  This claim for unjust enrichment is asserted against all Defendants.

98.      As a result of Defendants' fraudulent, deceptive, and wrongful conduct, Plaintiffs and members of the Class have conferred benefits upon Defendants in the form of payment for Defendants' program memberships.

99.      Defendants were at all times aware that the benefits conferred upon by them by Plaintiffs and the Class were the result of Defendants' fraudulent, deceptive, and wrongful conduct.

100.      Allowing Defendants to retain these unjust profits and other benefits would offend traditional notice of justice and fair play.  Under these circumstances, it would be inequitable for Defendants to retain the benefits and allowing them to do so would induce

companies to fraudulently conceal, mislead, and/or misrepresent key characteristics and obligations of their products in order to increase sales and profit.

101.    Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution from Defendants and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs and the Class request the following relief:

(A)    An order certifying a Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representatives of the Class, and designating their counsel as counsel for the Class;

(B)    An order prohibiting Defendants from engaging in the same type of endeavor as the enterprise engaged in, pursuant to 18 U.S.C. § 1964 (a);

(C)    An order requiring Defendants to immediately cease their wrongful conduct as set forth above, as well as enjoining Defendants from continuing to falsely market and advertise, conceal material information and conduct business via the unlawful and unfair business acts and practices complained of herein; an order requiring Defendants to engage in a corrective notice campaign; and an order requiring Defendants to refund to Plaintiffs and Class members the funds paid to Defendants for their enrollment in Defendants' Membership Programs;

(D)    Damages in an amount equal to treble the damages suffered by Plaintiffs and Class members as proven at trial, plus costs of suit and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964 (c) and (d);

(E)    All damages and interest thereon to which Plaintiffs and Class members are entitled, plus costs of suit and reasonable attorneys' fees, pursuant to 18 U.S.C. §§ 2520;

(F)     Restitution and disgorgement of all amounts obtained by Defendants as a result of

their misconduct;

(G)     Any and all equitable and declaratory relief as the Court deems just and proper;

(H)     All recoverable compensatory and other damages sustained by Plaintiffs and the

Class;

(I)     Reasonable attorneys' fees and costs of suit;

(J)     Pre-judgment and post-judgment interest; and

(K)     All such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

Dated:  June 17, 2010                          Respectfully submitted,


  /s/ Patrick A. Klingman
JAMES E. MILLER (CT 21560)
PATRICK A. KLINGMAN (CT 17813)
KAREN M. LESER-GRENON (CT 23587)
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone:  (860) 526-1100
Facsimile:  (860) 526-1120
Email: jmiller@sfmslaw.com
       pklingman@sfmslaw.com
       kleser@sfmslaw.com


DAVID A. BURKHALTER, II
BURKHALTER, RAYSON & ASSOCIATES, P.C.
P.O. Box 2777
Knoxville, TN 37901
Telephone:  (865) 524-4974
Facsimile:  (865) 524-0172
Email:  david@burkhalterrayson.com

JAMES C. SHAH
NATHAN C. ZIPPERIAN
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
Email: jshah@sfmslaw.com
        nzipperian@sfmslaw.com

ROSE F. LUZON
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (619) 234-7334
Email: rluzon@sfmslaw.com

*Attorneys for Plaintiffs and the
Proposed Class*

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| LUCY SCHNABEL, EDWARD SCHNABEL and ) BRIAN SCHNABEL Individually And On Behalf Of ) All Others Similarly Situated, ) ) | **CIVIL ACTION NO.** |
| Plaintiffs, ) ) | CLASS ACTION COMPLAINT |
| vs. ) | **JURY TRIAL DEMANDED** |
| TRILEGIANT CORPORATION, A Delaware ) Limited Liability Company; and AFFINION, INC., ) A Delaware Corporation, ) ) ) | |
| Defendants. ) ) | |

## DECLARATION OF LUCY SCHNABEL

I, Lucy Schnabel, declare under penalty of perjury as follows:

1.     I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information or belief, which I believe to be true.

2.     I am an adult citizen of the State of California.  I reside in Pleasant Hill, California, and I am a named Plaintiff in this litigation.

3.     On or about September 21, 2009, my credit card was charged $14.99 by Defendants, Affinion Inc., and Trilegiant Corporation.  I was also charged five subsequent and identical monthly charges.

4.     To the best of my knowledge, information and belief, Defendants, Affinion Inc., and Trilegiant Corporation, are corporations established under the laws of the State of

Delaware, with their principal places of business located in Norwalk, Connecticut.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _8th_ day of June, 2010 at Pleasant Hill, California.

_Lucy Schnabel_
LUCY SCHNABEL

2