**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LUCY SCHNABEL, EDWARD SCHNABEL and BRIAN SCHNABEL, Individually And On Behalf Of All Others Similarly Situated, | No. 3:10-CV-00957 (JCH) |
| Plaintiffs, | |
| vs. | |
| TRILEGIANT CORPORATION, A Delaware Limited Liability Company; and AFFINION, INC., A Delaware Corporation, | |
| Defendants. | October 19, 2011 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiffs, Lucy Schnabel, Edward Schnabel and Brian Schnabel ("Plaintiffs"), hereby move, pursuant to Federal Rule of Civil Procedure 37(a) and Local Civil Rule 37, for an Order requiring Defendants, Trilegiant Corporation ("Trilegiant") and Affinion, Inc. ("Affinion;" collectively, "Defendants"), to produce documents responsive to Plaintiffs' March 17, 2011 Requests for Production of Documents (the "Document Requests").

As stated more fully herein and as chronicled in the accompanying Declaration of Patrick A. Klingman in Support of Plaintiffs' Motion to Compel Production of Documents ("Klingman Dec."), since at least June, Defendants have essentially "strung along" Plaintiffs with assurances that a "rolling" production would soon be under way. Now, despite the recent production of a large quantity of pages, significant gaps remain. For instance, documents provided in connection with an investigation by a Congressional Committee have been largely withheld and other requests have been seemingly ignored. Notwithstanding the need for such documents to

establish, *inter alia*, Rule 23's criteria for class certification and liability, Defendants seem intent on producing documents, if at all, according to their own timetable.[1]

## I. **Factual and Procedural Background**

By their June 17, 2010 Complaint (the "Complaint"), Plaintiffs allege that several federal and state statutes, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1691, *et seq.*; the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, *et seq.*; California's Consumers Legal Remedies Act ("CLRA"), California Business and Professions Code §§ 1750, *et seq.*; and the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat. §§ 42-110a, *et seq.*; have been violated by Defendants through their uniform practice of deceptively enrolling unwitting consumers of legitimate online companies in one or more of Defendants' "membership programs," and thereafter charging these consumers' credit or debit card accounts with unauthorized monthly "membership fees." As explained in the Complaint, Defendants' wrongful conduct has been the subject of an investigation by the U.S. Senate Committee on Commerce, Science and Transportation (the "Senate Committee"), as well as several state Attorneys General (the "AGs"). *See* Complaint, ¶¶ 3, 9, 30.

Specifically, the Senate Committee's investigation found that Defendants engage in deceptive "post-transaction marketing" in connection with their "membership programs," whereby, among other things, Defendants use "interstitial sales offer" pages, which appear between the checkout page and the confirmation page of legitimate online merchants, such as

---

[1]Although Plaintiffs are proceeding with the depositions of several Trilegiant employees, they are doing so without the benefit of a complete production of documents. Likewise, while Plaintiffs will move for class certification on or before November 15, 2011, they will do so with an incomplete documentary record.

priceline.com and Kohl's Department Stores. *See* Complaint, ¶ 3. In addition, the Senate Committee confirmed that Defendants employ "data pass," whereby a consumer unwittingly "enrolls" in one of Defendants' "membership programs" without entering their credit or debit card information; "[i]nstead of requiring the consumer to enter [his/her] billing information a second time to confirm acceptance of the new offer, the retailer will pass the consumer's credit card and billing information to [Defendants] once the consumer has provided information that [Defendants] regard[] as 'proof of enrollment,' such as an e-mail address." Complaint, ¶ 4 (citation and internal quotations omitted).

Plaintiffs were victims of both of these deceptive practices, the deviousness of which was acerbated by the intentionally inscrutable nature of the monthly charges. *See* Complaint, ¶¶ 13-14. Accordingly, they press their claims not only for their own behalf, but also for a class and subclass of similarly situated consumers. *See* Complaint, ¶¶ 33-42.

Following initiation of this action, Defendants moved on September 29, 2010 to dismiss or to compel arbitration based on the argument the "membership programs," which Plaintiffs were unaware they had joined, nonetheless required that all disputes be submitted to arbitration. Following briefing, Defendants' motion to compel arbitration was denied by this Court's February 24, 2011 Ruling (which Defendants have appealed to the Court of Appeals for the Second Circuit and is now fully briefed). Thereafter, on April 19, 2011, Defendants jointly answered the Complaint.

**A. <u>Discovery To Date</u>**

In the interim, Plaintiffs served their Document Requests in mid-March, 2011. Although Defendants served their Responses and Objections to the Document Requests a little over a

month later, *see* Klingman Dec., Exhibit A, that was the last instance of Defendants' alacrity. As described in greater detail in the accompanying Declaration, the first significant production of documents did not occur until early August and the next production of documents did not occur until just prior to the September 1, 2011 status conference with the Court. *See* Klingman Dec., ¶¶ 9-12. More recently, just prior to this filing, another approximately 8,000 pages were produced. *See id.*, ¶ 18.

At over 70,000 pages, Defendants' production may be significant in terms of volume, but is nonetheless extraordinarily narrow, consisting primarily of (1) correspondence from various AGs, consumer protection departments, or similar state and local government entities; (2) training manuals (for Defendants' call center personnel); and (3) retention scripts (for use by call center personnel to try and retain consumers who call up to cancel their "memberships"). Whole categories of documents, including those produced in connection with the Senate Committee's investigation, have not been produced, *see* Klingman Dec., ¶ 13, and no attempt has been made to explain why certain other categories of documents are being withheld. *See id.*, ¶ 14 (noting, with respect to Request Nos. 23 and 30, Defendants' relevance objections). As also noted, counsel for the parties have engaged in numerous communications over the past five months. *See id.*, ¶¶ 3-11. However, as recently as October 14, 2011, there has been no indication that most of Defendants' outstanding discovery obligations will be fulfilled any time soon.

## II. ARGUMENT

### A. The Broad Standard For Discovery

The Supreme Court has endorsed the federal discovery rules as the means by which litigants can "obtain the *fullest possible knowledge* of the issues and facts before trial." *Hickman*

*v. Taylor*, 329 U.S. 495, 501 (1947) (emphasis added; footnote omitted). Following *Hickman*, the Supreme Court recognized the discovery rules as vital in making "a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the *fullest practicable extent*." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958) (emphasis added; citation omitted). Courts in this District have expressly endorsed this principle. *See*, *e.g.*, *In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003); *see also Rofail v. United States*, 227 F.R.D. 53, 58 (E.D.N.Y. 2005) ("The rules of discovery in the federal system are premised on the principle that parties be forthcoming with relevant information in their possession [such that] [o]pen discovery is the norm") (citations omitted); *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 357 (D. Conn. 2006) (same).

Consistent with the foregoing pronouncements, the standard for discovery has been recognized as necessarily broad. *See*, *e.g.*, *Herbert v. Lando*, 441 U.S. 153, 177 (1978) ("[T]he deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants on civil trials") (citations omitted). Thus, discovery may be obtained "regarding any matter, not privileged, that is relevant to the claims or defense of any party." Fed. R. Civ. P. 16(c)(1). There is no requirement that information be admissible in order to be discoverable, but only that it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Federal Rules specify when limitations may be imposed to restrict or halt discovery. *See* Fed. R. Civ. P. 26(b)(2); *see also King-Hardy v. Bloomfield Board of Education*, No. 3:01-CV-979 (PCD), 2002 WL 32506294, at *3 (D. Conn. Dec. 8, 2002) (Rule 26(b)(2) provides "[t]he only proscriptions imposed on discovery ....").

In order to effectuate discovery's purpose, relevance is likewise broadly construed for

purposes of discovery. Thus, "a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D. Conn. 2005) (citation and internal quotation omitted; emphasis in original).[2] *See Flynn v. Goldman, Sachs & Co.*, No. 91 Civ. 0035 (KMW), 1991 WL 238186, at *2 (S.D.N.Y. Nov. 1, 1991) ("At the discovery stage, doubts about relevance should ordinarily be resolved in favor of production in the first instance").

In light of the broad construction of relevance, it is plainly improper for Defendants to unilaterally withhold certain categories of requested documents and information from production based on claims of irrelevance. *See*, *e.g.*, *Moore v. Kaye Ins. Associates*, No. 94 Civ. 6559 (DLC), 1995 WL 600244, at *5 (S.D.N.Y. Aug. 8, 1995) ("Permitting parties to make ... unilateral determinations as to the relevancy of discovery requests would bring the orderly progression of litigation to a halt and prevent disputes from being resolved on the basis of all the relevant facts"); *Sellon v. Smith*, 112 F.R.D. 9, 13 (D. Del. 1986) (producing party "should not be the final arbiter of what is relevant or irrelevant in a particular document").

Even more egregious than withholding documents on supposed irrelevance grounds is the outright failure to produce documents, without even the pretense of an objection. Here, Defendants have done both. Although the number of pages of documents Defendants have produced in this action rivals the total number of pages produced to the Senate Committee, *see*

---

[2]As the *Breon* court noted, "[t]he definition of relevance continues to be liberally interpreted even after changes to Rule 26 in 2000." *Id.*, 232 F.R.D. at 52. *See*, *e.g.*, *Ryan v. Flowserve Corp.*, No. 3:03-CV-1769-B, 2006 WL 2079330, at *1 (N.D. Tex. May 31, 2006) ("Discovery under Rule 26 remains very broad in scope despite an amendment to the rule in 2000").

Complaint, ¶ 30, they are nowhere near as forthcoming. Accordingly, the Court should order Defendants to significantly augment their production as soon as possible.

### B. <u>The Documents And Information Requested Is Discoverable</u>

#### 1. Relevance Objections

Although Defendants have been less than clear, it appears that documents in response to at least two Requests are being withheld on the basis of relevance. Specifically, Request No. 23, which seeks documents relating to "the rate at which members use the benefits" offered by the membership programs, Exhibit A (Request No. 23) at 11, has been objected to as supposedly irrelevant, *see* Exhibit B, at 3, and no documents responsive to this Request have been produced. Likewise, Request No. 30, which calls for the production of documents "reflecting the amount of time a consumer was enrolled in the Membership Program before his or her cancellation," Exhibit A (Request No. 30), at 13, is a measure used by the Senate Committee, but was nonetheless objected to as irrelevant. Exhibit B, at 4. No documents responsive to this Request have been produced.

Among the findings made in the Senate Committee's report, which is specifically invoked in the Complaint, *see id.*, ¶ 3, is that many consumers enrolled in Defendants' "membership programs" cancel once they discover the monthly charges, without ever receiving the supposed benefits of membership. This fact bolstered one of the Senate Committee's ultimate conclusions: that Defendants knowingly charge consumers for services that Defendants know the consumers were unaware that they have ordered and will never use. Obviously, such a conclusion would

establish the deceptive nature of Defendants' practices.[3] Furthermore, the Senate Committee surmised that Defendants monitored rates at which the "membership" program benefits were used, and that a low rate of usage would be highly probative of the misleading and deceptive nature of Defendants' activities.

Under these circumstances and in light of Plaintiffs' allegations, documents responsive to Request Nos. 23 and 30 are unquestionably relevant. Defendants' argument that such information does not relate to how their membership programs are marketed, *see* Exhibit B, at 3, 4, may be valid as to an issue of liability, but is insufficient to justify the continued withholding of such information. Accordingly, Defendants should be ordered to produce documents and information responsive to Request Nos. 23 and 30 as soon as practicable.

**2. Documents Produced To The Senate Committee**

As specified in the accompanying Declaration, in response to Plaintiffs' request for all documents produced to the Senate Committee, Defendants sought a more narrowly tailored request. Accordingly, in a May 26, 2011 letter, Plaintiffs provided a more narrow list of documents. *See* Klingman Dec., Exhibit C. However, despite the fact that these documents, having been produced once before, are likely readily available, Plaintiffs still have not received any documents or information relating to the following:

- Defendants' participation in post-transaction marketing.
- Defendants' participation in data pass and "preacquired account" marketing.

[3]The Senate Committee found that information provided by Defendants supported the conclusion that a substantial percentage of their program "members" were unaware that they had enrolled in a "membership program" which, in turn, was supported by the fact that a sizeable majority of all calls received by their call center representatives are from "members" trying to cancel their "memberships."

- Payments made by Defendants to e-commerce websites and retailers in connection with the foregoing forms of marketing.
- Identity of e-commerce websites and retailers with whom Defendants have partnered to use the foregoing forms of marketing.
- Defendants' contractual agreements with e-commerce websites and retailers (other than Beckett Media (a/k/a beckett.com) and priceline.com, Inc.) with whom Defendants have partnered to use the foregoing forms of marketing.
- Defendants' communications with e-commerce websites and retailers with whom Defendants have partnered to use the foregoing forms of marketing, including, but not limited to, the revenues to be gained from such partnerships and requests to cease or minimize the use of such marketing.
- The Senate Committee's finding that Defendants "know that most of the 'members' they acquire through their aggressive online sales tactics do not understand they have been enrolled in a program that charges their credit or debit card on a recurring basis."
- The Senate Committee's finding that "[m]ost consumers enrolled in the clubs cancel their memberships when they discover the monthly charge and never receive any benefit from their club membership."
- Defendants' tracking of customer contacts with Defendants.
- Enrollment rates for Defendants' club memberships.
- Cancellation rates for Defendants' club memberships.
- Usage rates for Defendants' club memberships.

*See* Klingman Dec., ¶ 12, and Exhibit C attached thereto. As noted, these categories were provided in response to Defendants' request for a more tailored demand. *See id.*, ¶ 3. Since then, Defendants have largely ignored these requests, neither objecting nor producing any documents. If, at this stage, Defendants cannot separate the foregoing from among all documents produced to the Senate Committee, then all such documents should be produced. Furthermore, because they are likely segregated and easily obtainable, they should be produced immediately.

### 3. Other Outstanding Document Requests

Other Document Requests that have been ignored include the following:

- Request No. 4 seeks Defendants' internal communications and discussions regarding how the Membership Programs are marketed to consumers. Although Defendants' counsel's May 25 letter (Klingman Dec., Exhibit B) indicated that such documents would be produced in response to several requests, no non-complaint related internal communications, let alone discussions, by management or otherwise, of how Defendants' marketing operates, have been produced. The selected examples of Defendants' marketing do not reflect "any decision about how to market or advertise the Membership Programs ...." Exhibit A (Request No. 4), at 4.

- Request No. 12 seeks all marketing agreements or similar contracts with third-parties. No contracts, other than with Beckett Media and priceline.com, have been produced. In addition, Defendants have ignored Request No. 17, and have not even produced a definitive list of all of Defendants' marketing partners. *See* Exhibit A (Request Nos. 12 and 17), at 7, 9.

- Request No. 16 seeks documents concerning the procedures Defendants take to verify that consumers have actually enrolled in the Membership Programs. Defendants' May 25 letter stated that documents relating to "on-line data pass" would be produced. Without waiving Plaintiffs' objection to this limitation, no such documents have been produced.

- Request No. 18 seeks presentation materials used in connection with pitches made to third parties (existing or prospective marketing partners). Other than one set of Powerpoint slides to Beckett Media and one to priceline.com, no such documents have been produced.

- Request No. 21 seeks documents reflecting contact with Defendants *initiated* by customers or consumers, and Request No. 22 seeks all such correspondence. The documents produced by Defendants reflect only complaints.

- Request No. 26 seeks documents whereby consumers affirmatively decide to enroll in the Membership Programs. Although it was agreed with opposing counsel that this request could fall within Request No. 16, no documents were produced in response to either request.

- Request No. 35 seeks applicable insurance policies. No documents have been produced in response to this request.

### 4. Unanswered Questions Regarding Other Document Requests

In addition to the foregoing, Defendants' document production has prompted some questions that, despite Plaintiffs' counsel's request (*see* Exhibit L), Defendants have still not answered. *See* Klingman Dec., ¶ 14. For example, Request Nos. 2 and 3 generally seek examples of advertising and/or promotional or informational brochures regarding Defendants' membership programs. Defendants' counsel's May 25 letter stated that all such documents relating to Great Fun (the membership program in which Plaintiffs allegedly enrolled, but only one of at least eight such programs marketed by Defendants) would be produced. Notwithstanding that such an artificial limitation is plainly improper, there has been no confirmation that all such documents have been produced.

Request No. 15 seeks documents reflecting how Defendants handle cancellation requests from consumers. Defendants objected to this Request on the grounds of relevance, but nonetheless produced pages of "retention scripts," which Defendants' call center personnel presumably must follow in their efforts to retain (or even up-sell) consumers intent on cancelling. The production of this material constitutes a waiver of any relevance objection but, despite Plaintiffs' counsel's request, Defendants' counsel have not confirmed whether these scripts are the only way in which Defendants respond to cancellation requests.

Request Nos. 31 and 32 seeks documents relating to incentive payments that may have been provided to Defendants' call center employees. Defendants' counsel's May 25 letter indicated that they would investigate whether such incentives existed. To date, there have been no responsive documents produced. Despite Plaintiffs' counsel's request to opposing counsel, Plaintiffs are unable to determine whether such incentives existed, or whether they do exist, but

are being withheld from production.

In summary, Defendants have dragged out document production far longer than necessary, especially since some of the documents requested have been produced before in connection with the Senate Committee's investigation. Then, even when documents have been produced, they are woefully inadequate and entire categories are seemingly ignored. Some documents have been withheld on the flimsiest of excuses, while others have been withheld for no stated rationale at all. Moreover, simple questions of whether production is complete are likewise unheeded. This is contrary to the manner in which discovery should be conducted, and prompts Plaintiffs' request for this Court's intervention.

## III. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion to Compel and order Defendants to promptly produce documents and information responsive to Plaintiffs' Document Requests.

Respectfully submitted,

/s/ Patrick A. Klingman

James E. Miller (ct21560)
Patrick A. Klingman (ct17813)
Karen M. Leser-Grenon (ct23587)
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
Email: jmiller@sfmslaw.com
pklingman@sfmslaw.com
kleser@sfmslaw.com

David A. Burkhalter, II
BURKHALTER, RAYSON & ASSOCIATES, P.C.
P.O. Box 2777
Knoxville, TN 37901
Telephone: (865) 524-4974
Facsimile: (865) 524-0172
Email: david@burkhalterrayson.com

James C. Shah
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
Email: jshah@sfmslaw.com
nzipperian@sfmslaw.com

Rose F. Luzon
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (619) 234-7334
Email: rluzon@sfmslaw.com

***Attorneys for Plaintiffs and the Proposed Class***